19

Fee Paid # 150020180

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

UNITED STATES OF AMERICA,
*ex rel.* NADJA YANG,

Plaintiff-Relator,

v.

THE REGENTS OF THE UNIVERSITY OF MICHIGAN; and
EDUCATIONAL COMPUTER SYSTEMS, INC.,

Defendants.

Case: 2:26-cv-11373
Assigned To : Grey, Jonathan J.C.
Referral Judge: Grand, David R.
Assign. Date : 4/27/2026
Description: SEALED MATTER (lh)

---

**COMPLAINT**

**FILED IN CAMERA AND UNDER SEAL**

**PURSUANT TO 31 U.S.C. § 3730(b)(2)**

# I. INTRODUCTION

**1.** Plaintiff-Relator Nadja Yang ("Relator"), on behalf of the United States of America, brings this action under the False Claims Act, 31 U.S.C. §§ 3729–3733, against The Regents of the University of Michigan ("UMich") and Educational Computer Systems, Inc. ("ECSI") (collectively, "Defendants") to recover damages and civil penalties arising from Defendants' knowing

presentation of false claims for federal funds under Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 *et seq.*

**2.** UMich participates in Title IV programs pursuant to a Program Participation Agreement ("PPA") with the U.S. Department of Education, under which UMich certifies ongoing compliance with the requirements of 34 C.F.R. Part 668, including Subpart F, which prohibits misrepresentation about the nature of the institution's financial charges. UMich routes collection of unpaid institutional accounts receivable — debts that are not student loans — through a department it calls "Student Loan Collections," and through ECSI, a third-party student loan servicer registered with the Nationwide Multistate Licensing System (NMLS ID 1489841) and licensed as a student loan servicer in multiple states, including California, *see* Cal. Dep't of Fin. Prot. & Innovation, Directory of Student Loan Servicers (updated Apr. 8, 2026). The effect of these practices is to mischaracterize dischargeable institutional debt as nondischargeable student loan obligations, in violation of Subpart F and the terms of UMich's PPA.

**3.** Each Title IV disbursement made while UMich's PPA certification remains falsified by these ongoing misrepresentations constitutes a false claim under 31 U.S.C. § 3729(a)(1)(A) and (B).

**4.** The Department of Justice has established the Civil Rights Fraud Initiative, which applies the FCA against recipients of federal funds that knowingly violate federal law and falsely certify compliance. The Deputy Attorney General's memorandum establishing the Initiative states that the FCA "is implicated when a federal contractor or recipient of federal funds knowingly violates civil rights laws ... and falsely certifies compliance with such laws," and that "[a]ccordingly, a university that accepts federal funds could violate the False Claims Act." Memorandum from Deputy Attorney

General Todd Blanche, *Civil Rights Fraud Initiative* at 1 (May 19, 2025). The Department "strongly encourages anyone with knowledge of discrimination by federal funding recipients to consider filing a qui tam action under the False Claims Act." DOJ Press Release 25-524 (May 19, 2025). Although the Initiative is directed at civil rights compliance, the operative enforcement mechanism — false certification of compliance with federal requirements as a condition of receiving Title IV funds — is the same mechanism at issue here.

**5.** The practices described herein are not limited to UMich. ECSI represents that it services "more than 1,750 clients nationwide," ECSI, About Us, home.ecsi.net/about-us (last accessed April 26, 2026), and its portal presents institutional accounts receivable as "Student Loans & Receivables" and "Loan(s)" as a platform-wide default. The Consumer Financial Protection Bureau estimates that up to 3.9 million students use tuition payment plans each term, and that 98 percent of schools withhold transcripts as a collection tactic. CFPB, *Tuition Payment Plans in Higher Education* 4, 29 (Sept. 2023). The false claims generated by ECSI's platform extend to every Title IV institution it services.

## II. JURISDICTION AND VENUE

**6.** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 31 U.S.C. § 3732(a) (False Claims Act). Venue is proper in this district under 31 U.S.C. § 3732(a) because UMich is located in Ann Arbor, Michigan, within the Eastern District of Michigan, and the acts described herein occurred in this district.

# III. PARTIES

7. **Relator.** Nadja Yang is an undergraduate student at the University of Michigan on an authorized term withdrawal since February 2026 who has been subjected to the collection practices described herein and has direct, firsthand knowledge of Defendants' conduct.

8. **Defendant UMich.** The Regents of the University of Michigan is a constitutionally autonomous public university organized under Article VIII, § 5 of the Michigan Constitution, with its principal campus in Ann Arbor, Michigan. UMich participates in Title IV, HEA programs and receives federal financial aid funds disbursed to its students.

9. **Defendant ECSI.** Educational Computer Systems, Inc. is a Pennsylvania corporation and wholly owned subsidiary of Global Payments Inc. (NYSE: GPN) that provides student loan servicing and accounts receivable management to more than 1,750 institutions of higher education nationwide, including UMich. ECSI, About Us, home.ecsi.net/about-us (last accessed April 26, 2026). ECSI is licensed as a student loan servicer in multiple states, *see, e.g.*, Cal. Dep't of Fin. Prot. & Innovation, Directory of Student Loan Servicers (updated Apr. 8, 2026), and registered with the NMLS (ID 1489841). It operates the Heartland ECSI portal at heartland.ecsi.net, through which students access and make payments on both federal student loans and institutional accounts receivable. ECSI markets separate products for "Campus-Based Student Loan Servicing" ("ServicingSelect") and "Past Due Accounts Receivable Management" ("RecoverySelect"), *see* home.ecsi.net/clients-and-schools (last accessed April 26, 2026), but presents both categories identically to students on its portal and in its mailed statements.

# IV. FACTUAL ALLEGATIONS

## A. UMich's Collection Apparatus

**10.** UMich's primary student-facing contact for account inquiries is Student Financial Services ("SFS"), reachable at um-sfo@umich.edu and published at finance.umich.edu/finops/student/contact (last accessed April 26, 2026). The SFS contact page lists phone numbers, an email address, and office hours. It does not reference Student Loan Collections, does not identify any collections department, and does not disclose that unpaid tuition balances will be routed to a unit that characterizes all debts as student loans.

**11.** On February 13, 2026, Relator contacted Student Loan Collections directly at um-slc@umich.edu regarding the balance. Jazmin Cleveland, Student Loan Collections, responded that Relator did "not currently have an account with our office" and directed Relator to "contact Student Financial Services at um-sfo@umich.edu." That same day, SFS sent Relator an automated past-due notice stating that the "outstanding balance" had "resulted in a financial hold being placed on your student account" and that Relator "will not be able to register or receive your diploma."

**12.** On April 9, 2026, Relator contacted SFS at um-sfo@umich.edu regarding the financial hold. Heather DiDonato, Student Account Assistant, Student Financial Services, referred Relator that same day to "our internal collections department" at um-slc@umich.edu — the same Student Loan Collection Services that had two months earlier disclaimed having an account for Relator. The department's public-facing website at finance.umich.edu/finops/collections (last accessed April 26, 2026)

welcomes "borrowers" and states that it handles "student loans, a past due account, or both." The department's email address (um-slc@umich.edu), staff titles (e.g., "Collections Counselor, Student Loan Collections"), and website uniformly identify the unit as a student loan operation. A student's first encounter with the "Student Loan Collections" designation occurs not through any disclosure on the pages the University directs students to, but through an internal referral that recharacterizes an institutional tuition balance as a matter for a "loan collections" department.

**13.** The debts collected by Student Loan Collections include both federal Perkins Loans (which are student loans) and unpaid institutional accounts receivable for tuition, fees, and other charges (which are not student loans). The department makes no distinction between these categories in its name, its website, its communications to students, or its third-party servicer interface. On April 21, 2026, Kathleen Chapman, Collections Counselor, Student Loan Collections, responded to Relator's inquiry by directing Relator to log into "your Heartland ECSI account" and providing ECSI login credentials, offering multi-year monthly payment plans with a "$6.00 a month late fee ... added to each account each month the balance is not paid in full," and stating that "[t]he hold will remain on your account until the balance is paid in full." Chapman presented three repayment options, including an invitation to "offer the University a settlement" by proposing a dollar amount. Relator offered $1,500 on April 21, 2026. Chapman extended a counteroffer of $13,757.69 — representing 75% of the outstanding balance to rounding — on April 23, 2026, and repeated the identical figure on April 24, 2026. After the initial counteroffer, Relator restated the offer and asked the University to "consider that an unpaid institutional tuition balance is generally dischargeable as unsecured debt under Chapter 7, where unsecured

creditors may receive little or no distribution." Chapman's April 24, 2026 response did not acknowledge the dischargeability of the debt and instead reiterated the payment plan and the same counteroffer. The monthly payment plan offered by Student Loan Collections does not lift the financial hold during its term and adds a $6.00 monthly fee per account. A student who enrolls in the plan surrenders the option value of a dischargeable unsecured balance — converting it into actual cash outflows and a written repayment instrument — without consideration, since the University's collection posture remains identical whether the student signs or not.

**14.** UMich's "Rights and Responsibilities" page, published at finance.umich.edu/finops/collections/rights (last accessed April 26, 2026), states: "A loan is a serious financial obligation entailing legalities stipulated within the Promissory Note. The Promissory Note is a legally binding contract and is evidence a borrower has received a loan." The page uses the term "borrower" throughout, references "exit interviews" required by "federal regulations," and describes deferment and cancellation provisions — all terms of art specific to the federal student loan program. No distinction is drawn between students with actual student loans and students with institutional accounts receivable.

**15.** Separately, UMich's Student Financial Services actively solicits enrollment in a "U-M Payment Plan" under which students enroll in a written repayment agreement, pay a $30 non-refundable enrollment fee per term, and spread tuition over five monthly installments. *See* finance.umich.edu/finops/student/um-payment-plan (last accessed April 27, 2026). For the Fall 2026 term, the enrollment period opens April 22, 2026, with the first payment due June 30, 2026 — two months before tuition charges are posted to the student account in August and before the Regents

have approved the term's tuition rates. The enrollment deadline is September 1, 2026 — the day after the tuition due date of August 31, 2026. Students who enroll in the plan and subsequently become delinquent by fifteen days face termination of the plan, at which point "the normal University of Michigan financial regulations and payment schedules will apply" — i.e., the financial hold and Student Loan Collections apparatus described above. On April 24, 2026, SFS emailed Relator — who at that time had an outstanding past-due balance, a financial hold, and was in active settlement negotiations with Student Loan Collections — soliciting enrollment in the "Fall Term 2026 U-M Payment Plan." Neither the solicitation nor the plan's published terms disclose that by enrolling in a written repayment agreement, the student may be creating precisely the instrument — "forms evidencing the amount of [the student's] indebtedness," *Merchant*, 958 F.2d at 741 — that converts a dischargeable tuition obligation into a nondischargeable debt under 11 U.S.C. § 523(a)(8). This omission concerning the nature of the institution's financial charges constitutes a misrepresentation under 34 C.F.R. §§ 668.73(e), (f) and 668.75(e).

## B. The ECSI Portal and Statements

**16.** UMich directs students with unpaid balances to the Heartland ECSI portal at heartland.ecsi.net to view and pay their accounts. As of April 26, 2026, ECSI's homepage (home.ecsi.net) labels all student users "Students and Borrowers." The authenticated portal home page (heartland.ecsi.net/index.main.html#/app/home) categorizes all accounts under the tile "Student Loans & Receivables." The account overview page (heartland.ecsi.net/index.main.html#/app/page/accountoverview) labels the total balance as "Payoff Amount for All Loan(s)," lists individual

accounts accessible via links labeled "View Loan Detail," displays an asterisk note warning of "possible accrued interest" even where the account carries a 0% interest rate, and includes a footer stating: "For Prom Notes and Exits: This site uses Pop-up windows for printing your Promissory Notes and Exits." No promissory notes exist for institutional accounts receivable.

**17.** The portal's Documents page offers a "Loan Payoff Statement" and a "Consolidated Loan History Report," described as containing "all activities related to the loan(s) at this institution." The payoff statement, generated on ECSI letterhead, states: "Per your request, we have calculated the total payoff amount for your student loan(s) at University Of Michigan." It lists each institutional receivable under the column header "Loan Type." These are not student loans.

**18.** The Consolidated Loan History Report (heartland.ecsi.net/ index.main.html#/app/page/printConsolidatedReport), titled "Consolidated Student Loan Report," is generated under the sender address "University Of Michigan, 1000 Victors Way, Student Loan Collections, Ann Arbor, MI 48108." The report lists Relator as a "Borrower," counts institutional receivables as "Number of Loans," and labels each account section "End Loan 1," "End Loan 2," and "End Loan 3." The original posting of each tuition and fee charge is recorded as a "Loan Advance" — a term denoting the disbursement of borrowed funds. UMich did not advance a loan; it charged tuition. ECSI's system categorizes the origination of an institutional receivable as the disbursement of a loan, embedding the mischaracterization into the transactional record itself.

**19.** ECSI generates monthly mailed account statements for students with institutional accounts receivable. These statements contain a self-

contradictory characterization of the debts they describe. Relator's account includes three sub-accounts: STUDENT RECEIVBLES - ALL (A7901A, $170.00 principal), S/A COLL FEE - TUITION (A8201A, $16,990.50 principal), and S/A COLL FEE - INT HEALTH INS (A8401A, $1,165.08 principal), each carrying a 0% interest rate and a $6.00 monthly fee.

**20.** When an account is current, the statement thanks the student for "keeping your account current." When an account becomes past due, the statement escalates to: "IMPORTANT. Your account is 15 days past due. Based on the terms of the promissory note you signed, you have agreed to make payments on this account." The assertion that the student "signed" a "promissory note" is false — no promissory note exists for any of these accounts — and the false assertion is deployed conditionally, at the moment of delinquency, as a collection tactic directed at the student's understanding of the legal character of the debt.

**21.** The same page describes ECSI's payment application procedures by reference to "Federal regulations" and "Department of Education regulations," and discusses "Federal Perkins loans" in the same section that governs institutional accounts receivable. The statement instructs that payments will be applied "for private institutional loans, as required by the borrower's promissory note" — again referencing an instrument that does not exist.

**22.** Page three of the same statement, in the individual account detail for each of Relator's three sub-accounts, states: "This account is not a loan. This balance is for unpaid institutional expenses charged by your school."

**23.** ECSI's own statements thus demonstrate actual knowledge that these accounts are not loans, as the same document that labels debts as

"Loan(s)" and asserts that the student agreed to pay "based on the terms of the promissory note you signed" separately discloses that "this account is not a loan."

**24.** ECSI is a licensed student loan servicer (NMLS ID 1489841) that presents itself on every page of the portal and every statement as a regulated student loan servicing entity — while servicing debts its own documents acknowledge are "not a loan."

## C. The Regulatory Framework

**25.** UMich's participation in Title IV programs is conditioned on its PPA with the Department of Education, which requires compliance with 34 C.F.R. Part 668. Subpart F of Part 668 defines "misrepresentation" as "[a]ny false, erroneous or misleading statement an eligible institution, one of its representatives, or any ... organization ... with whom the eligible institution has an agreement to provide ... services makes directly or indirectly to a student." 34 C.F.R. § 668.71(c). Misrepresentation "includes any statement that omits information in such a way as to make the statement false, erroneous, or misleading." *Id.*

**26.** Section 668.73 identifies misrepresentation concerning "the nature of an eligible institution's financial charges" as including false statements concerning "[a] student's responsibility to repay any loans provided" and "[a] student's right to reject any particular type of financial aid or other assistance, or whether the student must apply for a particular type of financial aid, such as financing offered by the institution." 34 C.F.R. § 668.73(e), (f).

**27.** Section 668.75 provides that an omission of fact is a misrepresentation "if a reasonable person would have considered the

omitted information in making a decision to enroll or continue attendance at the institution," including omissions concerning "[t]he nature of the institution's ... financial charges." 34 C.F.R. § 668.75(e).

**28.** The mischaracterization is material in the Sixth Circuit specifically because of *Andrews University v. Merchant (In re Merchant)*, 958 F.2d 738 (6th Cir. 1992). In *Merchant*, the Sixth Circuit adopted the *In re Hill*, 44 B.R. 645 (Bankr. D. Mass. 1984), three-factor test for determining when a university's credit extension qualifies as a nondischargeable "loan" under 11 U.S.C. § 523(a)(8). The critical factor is whether the student "signed forms evidencing the amount of her indebtedness." 958 F.2d at 741. Where a student at a nonprofit university had done so, the court held the resulting obligation nondischargeable. *Id.*

**29.** ECSI's statement tells students that their obligation is "[b]ased on the terms of the promissory note you signed." This language falsely asserts the precise factual predicate — a signed instrument evidencing indebtedness — that *Merchant* requires for nondischargeability. A student in the Sixth Circuit who reads ECSI's statement would reasonably conclude, under binding circuit authority, that the debt cannot be discharged in bankruptcy. No promissory note exists. The misrepresentation thus directly imports the *Merchant* nondischargeability framework into the student's decision-making, deterring the exercise of bankruptcy rights that would otherwise be available for institutional accounts receivable that are not evidenced by any signed instrument.

**30.** *Merchant* also held that a university's withholding of a student-debtor's transcript to collect a prepetition debt violates the automatic stay under 11 U.S.C. § 362(a)(6). 958 F.2d at 741–42. UMich employs precisely this collection tactic — withholding transcripts and blocking registration

for students with unpaid institutional balances. The CFPB has independently found through supervisory examinations that "the blanket withholding of transcripts to pressure borrowers is an abusive practice under the Consumer Financial Protection Act" and that "servicers' blanket transcript withholding policies violated the prohibition on abusive acts and practices with respect to institutional loans." CFPB, *Supervisory Highlights Student Loan Servicing Special Edition* 8 (Sept. 29, 2022). The combined effect is that Defendants chill the exercise of rights available to debtors under the Bankruptcy Code by mischaracterizing dischargeable institutional debt as nondischargeable, while simultaneously employing collection tactics that, under *Merchant*, are subject to the automatic stay upon the filing of a petition. 958 F.2d at 741–42.

**31.** These determinations strengthen the materiality of Defendants' misrepresentations. The government would not have continued to allow Title IV participation had it known the full scope of Defendants' noncompliance with both Subpart F and the collection practices the CFPB has already found unlawful. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016) (materiality turns on whether the government would have paid had it known of the violation).

## D. Causal Mechanism

**32.** Under 34 C.F.R. § 668.164(c)(3)(i), an institution may apply no more than $200 of a student's current-year Title IV funds to prior-year institutional charges without the student's authorization. For balances substantially exceeding $200 — such as Relator's $18,343.58 balance — the university cannot simply apply Title IV funds to satisfy the prior-year debt. The student must separately resolve the balance, typically by making

payments through the collection apparatus described above or by authorizing the application of new Title IV funds.

**33.** Defendants' mischaracterization of institutional accounts receivable as student loans operates in this regulatory gap. Students who believe their institutional balance is a nondischargeable "student loan" — because the collection department, the ECSI portal, and the mailed statements uniformly describe it as such — are deterred from exploring discharge in bankruptcy and are instead induced to resolve the balance through additional federal borrowing or by authorizing application of new Title IV disbursements. Each such disbursement is a claim on the federal fisc that was induced by the misrepresentation.

## E. The False Claims

**34.** By certifying compliance with Subpart F in its PPA while systematically mischaracterizing institutional accounts receivable as student loans — through its department naming, its website content, and the communications of its third-party servicer ECSI — UMich has knowingly made false statements material to its eligibility to receive Title IV funds. Each subsequent Title IV disbursement to a UMich student constitutes a false claim under 31 U.S.C. § 3729(a)(1)(A). Each PPA certification constitutes a false record or statement material to a false claim under 31 U.S.C. § 3729(a)(1)(B).

**35.** ECSI has knowingly made, used, or caused to be made or used, false records and statements — specifically, its portal interface and mailed account statements — that are material to false claims paid by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B). ECSI's knowledge is established by its own documents: the same statement that labels debts as

"Loan(s)" and references "the promissory note you signed" discloses on a subsequent page that "this account is not a loan."

## V. CLAIMS FOR RELIEF

### Count One: False Claims — UMich (31 U.S.C. § 3729(a)(1)(A))

**36.** Relator incorporates the foregoing allegations by reference. UMich knowingly presented, or caused to be presented, false or fraudulent claims for payment to the United States by certifying compliance with Title IV requirements, including Subpart F, while engaging in the misrepresentations described above.

### Count Two: False Records or Statements — UMich (31 U.S.C. § 3729(a)(1)(B))

**37.** Relator incorporates the foregoing allegations by reference. UMich knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, including its PPA certifications, its "Student Loan Collections" website and communications, and the ECSI portal and statements generated on its behalf.

### Count Three: False Records or Statements — ECSI (31 U.S.C. § 3729(a)(1)(B))

**38.** Relator incorporates the foregoing allegations by reference. ECSI knowingly made, used, or caused to be made or used, false records or statements — including its portal interface labeling institutional accounts receivable as "Loan(s)" and "Student Loans & Receivables," and its mailed statements referencing "promissory notes" and "Federal regulations" for

debts its own fine print identifies as "not a loan" — that are material to false or fraudulent claims paid by the United States.

### Count Four: Conspiracy (31 U.S.C. § 3729(a)(1)(C))

**39.** Relator incorporates the foregoing allegations by reference. UMich and ECSI conspired to defraud the United States by agreeing to present institutional accounts receivable to students as "student loans" through a common platform, common terminology, and a common collection apparatus, with the knowledge and intent that such presentation would induce students to authorize the application of Title IV funds to balances that would not have been presented as loan obligations absent the conspiracy.

## VI. PRAYER FOR RELIEF

WHEREFORE, Relator respectfully requests that this Court enter judgment against Defendants and award:

1. Treble damages under 31 U.S.C. § 3729(a)(1) for each false claim;
2. Civil penalties under 31 U.S.C. § 3729(a)(1) for each false claim;
3. An award to Relator of the maximum percentage allowed under 31 U.S.C. § 3730(d);
4. Costs and expenses of this action; and
5. Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

/s/ Nadja Yang
Nadja Yang, *Pro Se*
WeWork c/o Nadja Yang
115 Broadway Street, 5th Floor
New York, NY 10006
nadja@njy.dev
(332) 203-3124

Dated: April 27, 2026

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: Washtenaw

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA, ex rel. NADJA YANG

**(b)** County of Residence of First Listed Plaintiff: Washtenaw
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Nadja Yang, Pro Se
WeWork c/o Nadja Yang
115 Broadway Street, 5th Floor
New York, NY 10006

## DEFENDANTS

THE REGENTS OF THE UNIVERSITY OF MICHIGAN;
EDUCATIONAL COMPUTER SYSTEMS, INC.

County of Residence of First Listed Defendant: ____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☒ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

376

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. §§ 3729-3733 (False Claims Act)

Brief description of cause:
Qui tam action for false certification of Title IV compliance and false statements regarding institutional accounts receivable

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____ DOCKET NUMBER ____

DATE: April 27, 2026

SIGNATURE OF ATTORNEY OF RECORD: [signature] Nadja Yang

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

# PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?

○ Yes
◉ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

○ Yes
◉ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

Notes :