**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| United States of America *ex rel.* Nadja Yang, | ) | CASE NO. 2:26-cv-11373-MAG-DRG |
| Plaintiff, | ) | HON. JUDGE MARK A. GOLDSMITH |
| v. | ) | HON. MAGISTRATE JUDGE DAVID R. GRAND |
| The Regents of the University of Michigan, et al. | ) | **Defendant The Regents of the University of Michigan's Motion to Dismiss Plaintiff's Complaint** |
| Defendants. | ) | |

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendant the Regents of the University of Michigan moves to dismiss Plaintiff-Relator Nadja Yang's complaint on the grounds that the Court lacks subject matter jurisdiction over this case and that, even assuming the factual allegations in the complaint are true, the complaint fails to state a claim upon which relief can be granted.

Dated: October 26, 2026

Respectfully submitted,

*/s/ Lisa D. Starks*
Lisa D. Starks (P-78128)
**Barnes & Thornburg LLP**
171 Monroe Ave. NW, Ste. 1000
Grand Rapids, MI 49503
Phone: (260) 425-4627
Facsimile: (260) 424-8316
Lisa.Starks@btlaw.com

*/s/ Robert C. Folland*
Robert C. Folland (Ohio Bar No. 0065728)
**Barnes & Thornburg LLP**
41 S. High St., Ste. 3300
Columbus, OH 43215
Phone: (614) 628-0096
Facsimile: (614) 628-1433
Rob.Folland@btlaw.com
*Attorneys for Defendant The Regents of the University of Michigan*

## ISSUES PRESENTED

1. Whether the Court has subject matter jurisdiction over a *qui tam* action alleging violations of the False Claims Act where the relator is *pro se* and the United States has declined to intervene in the case.

2. Whether the Regents of the University of Michigan is a "person" subject to liability in a *qui tam* action alleging violations of the False Claims Act.

3. Whether Counts One, Two, and Four of the complaint, alleging violations of the False Claims Act, adequately plead factual allegations that, if taken as true, would state a claim upon which relief can be granted.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

31 U.S.C. § 3729(a)(1)(A)-(C)

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765, 787 (2000)

*United States ex rel. Young v. CSL Plasma*,
2020 WL 5819593 (E.D. Mich. Sept. 30, 2020)

*Kreipke v. Wayne State Univ.*,
807 F.3d 768 (6th Cir. 2015)

*United States v. Quicken Loans Inc.*,
239 F.Supp.3d 1014, 1021 (E.D. Mich. 2017)

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176, 192 (2016)

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
874 F.3d 905, 917 (6th Cir. 2017)

# TABLE OF CONTENTS

**Page**


MEMORANDUM IN SUPPORT....................1

I. PLAINTIFF'S ALLEGATIONS....................1

II. LAW & ARGUMENT....................5

A. Ms. Yang may not proceed in this action *pro se*....................5

B. The University is not a "person" subject to liability under the FCA....................7

C. Ms. Yang has failed to state a claim upon which relief can be granted against the University....................10

1. Counts One and Two of the complaint fail to state a claim under the FCA....................11

2. Count Four of the complaint fails to state a claim for conspiracy....................18

III. CONCLUSION....................20

## INDEX OF AUTHORITY

**Page(s)**

**Cases**

*United States ex rel. Angelo v. Allstate Ins. Co.*,
106 F.4th 441 (6th Cir. 2024) ....................15, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................10, 11, 19

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) ....................10

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
501 F.3d 493 (6th Cir. 2007) ....................15, 16

*Carter v. Washtenaw Cnty.*,
No. 09-14994, 2010 WL 3222042 (E.D. Mich. Aug. 14, 2010) ....................5

*Chesbrough v. VPS, P.C.*,
655 F.3d 461 (6th Cir. 2011) ....................10, 14

*Chi v. Regents of the Univ. of Mich.*,
Case No. 3:26-cv-11021 (N.D. Cal. Sept. 28, 2026) ....................4

*United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002) ....................15

*Doe v. Bd. of Regents of Univ. of Mich.*,
2023 WL 5095799 (6th Cir. Aug. 9, 2023) ....................9

*Ernst v. Rising*,
427 F.3d 351 (6th Cir.) ....................8

*Est. of Ritter by Ritter v. Univ. of Mich.*,
851 F.2d 846 (6th Cir. 1988) ....................9

*Evans v. Mercedes Benz Fin. Servs., LLC*,
2011 WL 2936198 (E.D. Mich. July 21, 2011) ....................11

*Evers v. Tenn. Dep't of Child.*,
2026 WL 2124187 (E.D. Tenn. July 23, 2026) ....................................................6

*Frank v. Dana Corp.*,
547 F.3d 564 (6th Cir. 2008) ........................................................................11

*Granader v. Pub. Bank*,
417 F.2d 75 (6th Cir. 1969) ............................................................................3

*Greer v. Strange Honey Farm, LLC*,
114 F.4th 605 (6th Cir. 2024) ........................................................................11

*Haines v. Kerner*,
404 U.S. 519 (1972)......................................................................................11

*Henry v. Caruso*,
2014 WL 525032 (E.D. Mich. Feb. 7, 2014)....................................................11

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
874 F.3d 905 (6th Cir. 2017) ........................................................................18

*Kreipke v. Wayne State Univ.*,
807 F.3d 768 (6th Cir. 2015) ...................................................................7, 8, 9

*United States ex rel. Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016) ............................................................................19

*United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*,
739 F.3d 598 (11th Cir. 2014) ..........................................................................8

*McGhee v. Light*,
384 F.Supp.3d 894 (S.D. Ohio 2019) ..............................................................6

*McPike-McDyess v. Regents of the Univ. of Mich.*,
2015 WL 626769 (E.D. Mich. Feb. 12, 2015)....................................................9

*United States ex rel. Mergent Servs. v. Flaherty*,
540 F.3d 89 (2d Cir. 2008) ..............................................................................6

*United States ex rel. Mich. v. State Farm Mut. Auto. Ins. Co.*,
2025 WL 101639 (6th Cir. Jan. 15, 2025)........................................................18

*Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) .......... 7

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
838 F.3d 750 (6th Cir. 2016) .......... 12

*Sanderson v. HCA-The Healthcare Co.*,
447 F.3d 873 (6th Cir. 2006) .......... 15

*United States ex rel. Sheldon v. Kettering Health Network*,
816 F.3d 399 (6th Cir. 2016) .......... 12

*Stephens v. Nat'l City Corp.*,
2020 WL 435439 (N.D. Ohio Jan. 28, 2020) .......... 6

*United States ex rel. Stoner v. Santa Clara Cnty. Off. of Educ.*,
502 F.3d 1116 (9th Cir. 2007) .......... 5, 6

*United States v. Quicken Loans Inc.*,
239 F.Supp.3d 1014 (E.D. Mich. 2017) .......... 12, 14, 15

*United States v. Univ. of Mass., Worcester*,
812 F.3d 35 (1st Cir. 2016) .......... 8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) .......... 13, 17

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) .......... 6, 7

*Yang v. Educ. Comput. Sys., Inc.*,
Case No. 2:26-cv-12839 (E.D. Mich. Aug. 13, 2026) .......... 4

*Yang v. Lynch*,
Case No. 3:26-ap-3032 (Bankr. N.D. Cal. July 15, 2026) .......... 3

*Yang v. Regents of the Univ. of Mich.*,
Case No. 3:26-cv-7259 (N.D. Cal. July 15, 2026) .......... 3

*In re: Yang*,
Case No. 3:26-bk-30507 (Bankr. N.D. Cal. June 8, 2026) .......... 3

*In re: Yang*,
Case No. 3:26-cv-7302 (N.D. Cal. July 16, 2026) ....................................................4

*United States ex rel. Young v. CSL Plasma*,
2020 WL 5819593 (E.D. Mich. Sept. 30, 2020) .......................................................6

**Statutes**

11 U.S.C. § 523(a)(8)..............................................................................................2

11 U.S.C. § 525(a) .....................................................................................................3

31 U.S.C. § 3729(a)(1)...............................................................................................7

31 U.S.C. § 3729(a)(1)(A) ........................................................................................11

31 U.S.C. § 3729(a)(1)(A) and (B) ..........................................................................13

31 U.S.C. § 3729(a)(1)(B) ...................................................................................10, 12

31 U.S.C. § 3729(a)(1)(C) ........................................................................................18

31 U.S.C. § 3729(b)(4)..............................................................................................16

31 U.S.C. § 3730(b)(1)................................................................................................5

42 U.S.C. § 1983 .........................................................................................................4

False Claims Act ................................................................................................*passim*

Freedom of Information Act .......................................................................................4

PPA ................................................................................................................13, 14, 16

Program Fraud Civil Remedies Act of 1986 ..............................................................7

**Other Authorities**

34 C.F.R. § 668.1 *et seq.* .....................................................................................12, 14

34 C.F.R. § 668.73 ....................................................................................................13

Eleventh Amendment..............................................................................................8, 9

Fed. R. Civ. P. 9(b) ............................................................................................*passim*

Fed. R. Civ. P. 11 .................................................................................................4

Fed. R. Civ. P. 12(b)(6)...........................................................................................11

# MEMORANDUM IN SUPPORT

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff-Relator Nadja Yang is a student at the University of Michigan (the "University") who, at the time the complaint in this case was filed, was on an authorized term of withdrawal. PageID.46. On February 13, 2026, Ms. Yang contacted the University's Student Loan Collections office about an outstanding balance owed for unpaid tuition. PageID.47. She alleges that she was told that she did not have an account with Student Loan Collections and to reach out to the Student Financial Services office. *Id.* She claims that she then received a notification from Student Financial Services that she had an unpaid balance, that a hold had been placed on her account, and that she would not be able to register for classes or receive her diploma.[1] *Id.*

On April 9, 2026, Ms. Yang contacted Student Financial Services again. *Id.* She was allegedly directed back to Student Loan Collections. *Id.* On April 21, 2026, Kathleen Chapman, a Collections Counselor in the Student Loan Collections office, contacted Ms. Yang. PageID.48. According to the complaint, Ms. Chapman offered three options to settle the outstanding balance of $18,343.58, including a potential settlement with the University, and invited Ms. Yang to propose a dollar amount. *Id.*

[1] Since having filed this complaint, Ms. Yang has paid all past due amounts to the University and is currently enrolled and attending the University for the Fall 2026 semester.

Ms. Yang offered $1,500 to settle the balance. *Id.* On April 23, 2026, Ms. Chapman countered with an offer of $13,757.69, or 75% of the outstanding balance. *Id.*

Ms. Yang responded that day; she restated her offer and told Ms. Chapman that she believed the unpaid balance would be dischargeable in a Chapter 7 bankruptcy proceeding.[2] PageID.48-49. Ms. Yang had not yet filed for bankruptcy, and the complaint contains no allegations that she had ever mentioned a potential future bankruptcy to University personnel before this point. On April 24, 2026, Ms. Chapman responded, restating the University's offer without addressing whether the balance could be discharged in bankruptcy. PageID.49.

On April 27, 2026, Ms. Yang filed this action, under seal, pursuant to the procedure for *qui tam* actions alleging violations of the False Claims Act ("FCA"). The United States noticed its election to decline to intervene in this case. PageID.62-65. Ms. Yang is proceeding *pro se* in this action, and the United States directed "the Court's attention to the well-settled rule that a non-attorney Relator may not proceed *pro se* in a False Claims Act case where the Government has declined to intervene." PageID.63. The United States consented to the dismissal of this action. *Id.* The Court then ordered the seal lifted. PageID.39-40.

Since filing the complaint here, Ms. Yang has initiated six additional legal

2 Ms. Yang's contentions notwithstanding, her ability to discharge her higher education debts is not at all clear given the provisions of 11 U.S.C. § 523(a)(8).

proceedings involving or against the University or its personnel.[3] While they do not directly bear on the disposition of the issues here, a brief summary of each is provided for background and the Court's convenience.

On June 8, 2026, Ms. Yang petitioned for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of California. *In re: Yang*, Case No. 3:26-bk-30507 (Bankr. N.D. Cal. June 8, 2026). She then moved for sanctions against the University, alleging a willful violation of the automatic bankruptcy stay. The court dismissed the case for improper venue on June 23, 2026.

On July 15, 2026, Ms. Yang initiated an adversary proceeding against a University employee, alleging Discrimination by a Governmental Unit in violation of 11 U.S.C. § 525(a) and Ongoing and Threatened Violation of Federal Law. *Yang v. Lynch*, Case No. 3:26-ap-3032 (Bankr. N.D. Cal. July 15, 2026). The University has moved to dismiss that case.

The same day that she filed the adversary proceeding, Ms. Yang noticed an appeal from the bankruptcy court's dismissal of the bankruptcy petition. *Yang v. Regents of the Univ. of Mich.*, Case No. 3:26-cv-7259 (N.D. Cal. July 15, 2026). Briefing is ongoing.

On July 16, 2026, Ms. Yang filed a Motion to Withdraw Reference of

[3] "Federal courts may take judicial notice of proceedings in other courts of record." *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969) (collecting cases).

Sanctions Proceeding, regarding her motion for sanctions in the dismissed bankruptcy case. *In re: Yang*, Case No. 3:26-cv-7302 (N.D. Cal. July 16, 2026). The University made a special appearance to oppose the withdrawal, and Ms. Yang moved for Fed. R. Civ. P. 11 sanctions, this time against the University's counsel. The court has not yet ruled on the withdrawal or sanctions motions.

On August 13, 2026, Ms. Yang sued four current or former University employees in this Court. *Yang v. Educ. Comput. Sys., Inc.*, Case No. 2:26-cv-12839 (E.D. Mich. Aug. 13, 2026). She brought claims for Willful Violation of the Automatic Stay, Bankruptcy Discrimination by a Governmental Unit, Conspiracy under 42 U.S.C. § 1983, and Prohibited Collection Practices. The University has moved to dismiss.

Most recently, Ms. Yang sued the University in the Northern District of California. *Chi v. Regents of the Univ. of Mich.*, Case No. 3:26-cv-11021 (N.D. Cal. Sept. 28, 2026).[4] In that case, Ms. Yang is challenging the constitutionality of Michigan's "Freedom of Information Act" after the University denied her request for documents related to the University's outside counsel and representation under the statutory exception for ongoing litigation between the requesting party and a

---

[4] Although the named plaintiff in this case is "Chi," the complaint identifies Chi as Nadja Yang. Counsel for the University has also communicated with Ms. Yang and confirmed that this is her lawsuit. This is the third name or alias that Ms. Yang has used in connection to her dealings with the University. In her application process to the University, Ms. Yang used a different name, Chenhui Zhu.

public body. The University has not yet filed a response in that case.

Turning back to the case before the Court, the University now moves to dismiss. The complaint is deficient for several reasons and should be dismissed.

## II. LAW & ARGUMENT

Ms. Yang cannot proceed *pro se* in this action, so the complaint fails at the threshold. But even if the Court allows Ms. Yang to proceed *pro se*, the University is not a "person" for purposes of liability under the FCA. And even if the Court holds otherwise, Ms. Yang has still failed to adequately plead several elements needed to state a claim under the FCA, which is subject to the heightened Fed. R. Civ. P. 9(b) pleading standard.

### A. Ms. Yang may not proceed in this action *pro se*.

As the United States correctly pointed out when it declined to intervene, it is a "well-settled rule that a non-attorney Relator may not proceed *pro se* in a False Claims Act case where the Government has declined to intervene." PageID.63 (citing *United States ex rel. Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007) and *Carter v. Washtenaw Cnty.*, No. 09-14994, 2010 WL 3222042, *1 (E.D. Mich. Aug. 14, 2010)). This was the reason given by the United States for its consent to dismissal, as required under 31 U.S.C. § 3730(b)(1). PageID.63.

The justification for not allowing relators to proceed *pro se* when the United

States has declined to intervene is based on the unique nature of FCA claims and the unique position of the relator. An FCA claim is brought "on behalf of the United States." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787 (2000). Although the relator can receive a partial assignment of the United States' damages, satisfying the Article III standing requirement, "it does not transform a *qui tam* action into the relator's 'own case.'" *Stoner*, 502 F.3d at 1126. Because relators are not prosecuting their own cases but are effectively representing the United States, they cannot pursue FCA claims *pro se*. *Id.* at 1126-27.

Ms. Yang is not represented by counsel, and she is not an attorney admitted to practice in any court. This Court has held that it "lacks subject matter jurisdiction to hear a *qui tam* action brought on behalf of the United States by a *pro se* litigant." *United States ex rel. Young v. CSL Plasma*, 2020 WL 5819593, *2 (E.D. Mich. Sept. 30, 2020); *accord Evers v. Tenn. Dep't of Child.'s Servs.*, 2026 WL 2124187, *7 (E.D. Tenn. July 23, 2026); *Stephens v. Nat'l City Corp.*, 2020 WL 435439, *9 (N.D. Ohio Jan. 28, 2020); *McGhee v. Light*, 384 F.Supp.3d 894, 897 (S.D. Ohio 2019).[5] Unless she retains licensed counsel, the Court lacks subject matter jurisdiction over this action, and it must be dismissed.

---

[5] Some courts consider the bar on *pro se* litigants proceeding in *qui tam* actions to be statutory, rather than jurisdictional. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 90 (2d Cir. 2008). Regardless of whether the bar is properly considered "jurisdictional" or "statutory," it is fatal to Ms. Yang's complaint.

**B. The University is not a "person" subject to liability under the FCA.**

The FCA allows a plaintiff-relator to bring a claim on behalf of the United States only against "any person" who commits certain proscribed acts. 31 U.S.C. § 3729(a)(1). The FCA does not define "person," but the Supreme Court "has held that a 'person' under the FCA does not include a state or state agency." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774-75 (6th Cir. 2015) (citing *Stevens*, 529 U.S. at 787-88).

The Supreme Court in *Stevens* had three reasons to conclude that a state or state agency was not a "person" subject to potential FCA liability. First, the Court analyzed the history of the FCA against the "longstanding interpretive presumption that 'person' does not include the sovereign" to conclude that the FCA was not intended or structured to apply to states. *Stevens*, 529 U.S. at 780-84. Second, the Court noted that the FCA allowed for damages that are punitive in nature, inconsistent with "the presumption against imposition of punitive damages on governmental entities." *Id.* at 784-85 (citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 262-63 (1981)). Third, the Court observed that the FCA's sister scheme in the Program Fraud Civil Remedies Act of 1986 ("PFCRA") defined "person" to specifically exclude states. *Id.* at 786. It would not make sense to exempt states from the lesser damages under the PFCRA while subjecting them to far greater damages under the FCA. *Id.*

In 2015, the Sixth Circuit considered for the first time whether a Michigan state university was a "person" subject to potential FCA liability. *Kreipke*, 807 F.3d at 774-75. The Sixth Circuit adopted "the same test used to determine whether an entity is an 'arm of the state' entitled to sovereign immunity under the Eleventh Amendment. . . . to determine whether an entity is a state agency excluded from liability under the FCA." *Id.* at 775. Circuit courts that had addressed this issue had unanimously applied the arm-of-the-state test. *Id.* (citing *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 602 (11th Cir. 2014) ("joining the Fourth, Fifth, Ninth, and Tenth Circuits in adopting the 'arm of the state' analysis under the Eleventh Amendment for purposes of the FCA")).[6] The Sixth Circuit concluded "that [Wayne State University] is an arm of the State of Michigan and therefore not a 'person' subject to liability under the FCA." *Id.* at 781.

In determining whether an entity is an "arm of the state," courts in the Sixth Circuit look at four factors:

> "(1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government."

*Id.* at 775 (quoting *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir.)).

---

[6] The First Circuit has also since adopted this test. *United States v. Univ. of Mass., Worcester*, 812 F.3d 35, 39 (1st Cir. 2016).

Applying this test, the Sixth Circuit and this Court have routinely held that the Board of Regents of the University of Michigan specifically is an arm of the state, entitled to Eleventh Amendment immunity. *E.g.*, *Doe v. Bd. of Regents of Univ. of Mich.*, 2023 WL 5095799, *2 (6th Cir. Aug. 9, 2023) ("This court has previously held that the Board of Regents of the University of Michigan is entitled to Eleventh Amendment immunity.") (citing *Est. of Ritter by Ritter v. Univ. of Mich.*, 851 F.2d 846, 848 (6th Cir. 1988)); *McPike-McDyess v. Regents of the Univ. of Mich.*, 2015 WL 626769, *1 (E.D. Mich. Feb. 12, 2015) ("The Board of Regents of the University of Michigan is an arm of the State of Michigan, and hence is cloaked with sovereign immunity.") (internal citation omitted).

Because the Board of Regents of the University of Michigan is an arm of the state entitled to Eleventh Amendment immunity, it cannot be considered a "person" for purposes of FCA liability. This is consistent with *Kreipke*, which involved FCA claims brought against the Board of Governors of Wayne State University. Both the Board of Regents of the University of Michigan and the Board of Governors of Wayne State University are entities recognized in the Michigan Constitution as responsible for the management of their respective universities. Mich. Const. art. VIII, § 5. Because the Sixth Circuit has held that an FCA claim cannot be brought against the Board of Governors of Wayne State University, so too must an FCA claim be barred against the Board of Regents of the University of Michigan.

The Board of Regents of the University of Michigan is not a "person" subject to FCA liability. Thus, Counts One, Two, and Four of the complaint must fail.[7] The Court should dismiss each count against the University.

**C. Ms. Yang has failed to state a claim upon which relief can be granted against the University.**

Even if the Court concludes that Ms. Yang may proceed *pro se* and that the University is a proper defendant under the FCA, she has still failed to state a claim.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must take all factual allegations as true, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation omitted). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Additionally, "[c]omplaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity . . . ." *Chesbrough v. VPS,*

[7] Count Three of the complaint for False Records or Statements in violation of 31 U.S.C. § 3729(a)(1)(B) was only brought against Defendant Educational Computer Systems, Inc. and is not addressed in this motion.

*P.C.*, 655 F.3d 461, 466 (6th Cir. 2011). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. . . . At a minimum, Plaintiffs must allege the time, place and contents of the misrepresentations upon which they relied." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal citations omitted). This is an exacting standard. Indeed, "[t]he point of Civil Rule 9(b) is to prevent, not facilitate, casual allegations of fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 615 (6th Cir. 2024) (citation omitted).

As mentioned, Ms. Yang is proceeding *pro se*. It is true that when a plaintiff is *pro se*, "the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney." *Henry v. Caruso*, 2014 WL 525032, at *3 (E.D. Mich. Feb. 7, 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Even so, "a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6). Meaning, a plaintiff still must allege a set of facts that would establish the material elements of a claim." *Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (citing *Twombly*, 550 U.S. at 556).

#### 1. Counts One and Two of the complaint fail to state a claim under the FCA.

Ms. Yang brings two counts against the University under 31 U.S.C. §

3729(a)(1)(A), commonly called a "presentment" claim, and § 3729(a)(1)(B), commonly called a "false statement" claim. To state a presentment claim, a relator must adequately plead that:

> (i) [Defendant] presented, or caused to be presented, a claim for payment or approval; (ii) the claim was false or fraudulent; and (iii) [Defendant's] acts were undertaken "knowingly," meaning with actual knowledge of the information, or with deliberate ignorance or reckless disregard for the truth or falsity of the claim.

*United States v. Quicken Loans Inc.*, 239 F.Supp.3d 1014, 1021 (E.D. Mich. 2017) (citing *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 761 (6th Cir. 2016)). To state a false statement claim, a relator must adequately plead:

> (i) [Defendant] made a false statement or created a false record; (ii) [Defendant] did so "knowingly" (defined the same as in a presentment claim); (iii) [Defendant] submitted the claim for payment to the federal government; and (iv) the false statement or record was material to the Government's decision to make the payment sought by [Defendant's] claim.

*Id.* at 1022 (citing *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016)).

Although the elements of the two claims differ slightly, both rest on the same theory involving the University's compliance with Title IV regulatory requirements under 34 C.F.R. § 668.1 *et seq.* "[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims

Act." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). Because materiality is a requirement under either of Ms. Yang's claims, Counts One and Two will be discussed together for simplicity.

Ms. Yang's claims fail for several reasons. Her complaint alleges a scheme by which the University classified debts that are not student loans through "Student Loan Collections," mischaracterizing debt dischargeable in bankruptcy as nondischargeable student loans. PageID.44. Because the University participates in Title IV programs, pursuant to a Program Participation Agreement ("PPA"), it must certify ongoing compliance with certain regulatory requirements, which prohibit any "[m]isrepresentation concerning the nature of an eligible institution's financial charges, . . ." 34 C.F.R. § 668.73. The complaint concludes that "[e]ach Title IV disbursement made while UMich's PPA certification remains falsified by these ongoing misrepresentations constitutes a false claim under 31 U.S.C. § 3729(a)(1)(A) and (B)." PageID.44.

As an initial matter, this is not a false statement within the context of FCA claims. The alleged false statement (compliance with the regulatory framework) is based on the representation of the debt as a student loan, which is typically not dischargeable in bankruptcy. Thus, the underlying false statement is based on a legal conclusion, rather than a factual representation. To find a false statement, the Court would need to conclude that debt other than student loans is dischargeable in

bankruptcy, that student loans are not, and that a mislabeling of one or the other violates the regulatory framework under 34 C.F.R. § 668.1 *et seq.*

But even if the alleged statements were false, the complaint still fails to meet the scienter requirement for FCA claims: that the defendant presented a false claim or made a false statement knowingly. To adequately plead knowledge under the heightened pleading standard, Ms. Yang must allege "(i) the time, place, and content of the alleged misrepresentation; (ii) the fraudulent scheme; (iii) the defendant's fraudulent intent; and (iv) the resulting injury." *Quicken Loans*, 239 F.Supp.3d at 1023 (citing *Chesbrough*, 655 F.3d at 466).

Ms. Yang has failed to adequately plead scienter. The complaint does not contain any allegations that would plausibly support an inference that the University knew how the debts were being characterized or how it may have failed to comply. The complaint does allege that on either April 23 or 24, 2026, Ms. Yang "asked the University to 'consider that an unpaid institutional tuition balance is generally dischargeable as unsecured debt under Chapter 7, where unsecured creditors may receive little or no distribution.'" PageID.48-49. But even this cannot support the inference that the University knew about the purported mischaracterization of the debt and that it was allegedly falsely certifying its PPA. At most, it supports the inference that the University knew about Ms. Yang's beliefs regarding bankruptcy law. Ms. Yang makes the threadbare recital that the University "knowingly

presented" and "knowingly made" false claims for payment. PageID.57. But a court "cannot accept the bare use of the terms 'knowingly' or 'knowledge' without evidence of what information [Defendant] knew, and when and how it knew it." *United States ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 451 (6th Cir. 2024) (citation omitted).

Beyond that, the complaint fails to present specific allegations about any statements made to the Government. "A clear and unequivocal requirement that a relator *allege specific false claims* emerges from the conjunction of Rule 9(b) and the statutory text of the FCA." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (emphasis added). "Rule 9(b) 'does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply . . . that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.'" *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)).

Courts have recognized that in cases involving fraudulent schemes that are "complex," "far-reaching," or "encompass many allegedly false claims over a substantial period of time," it may not be possible to plead every instance of a false statement. *Quicken Loans*, 239 F.Supp.3d at 1023 (quoting *Bledsoe*, 501 F.3d at

509). But consistent with Rule 9(b)'s requirements, courts "should not construe this scheme too broadly." *Id.* Even a fraudulent scheme pleaded with particularity will not, by itself, survive a motion to dismiss. *Id.* (citing *Bledsoe*, 501 F.3d at 504). "Rather, the plaintiff must plead a specific example of a false claim with particularity that was 'submitted to the government pursuant to that scheme.'" *Id.* (citing *Bledsoe*, 501 F.3d at 510). Only then can more generalized allegations fill in the gaps. *Id.* (citing *Bledsoe*, 501 F.3d at 510).

Ms. Yang's complaint falls short of this requirement. It fails to point to specific examples of false claims presented or false statements made, instead relying on vague generalities about the University's relationship to the Government and the money the University receives. For example, it states that "UMich participates in Title IV, HEA programs and receives federal financial aid funds disbursed to its students" and that "[e]ach subsequent Title IV disbursement to a UMich student constitutes a false claim . . . . Each PPA certification constitutes a false record or statement material to a false claim . . . ." PageID.46, 56. This is not enough to meet the requirements of Rule 9(b), and Ms. Yang has not adequately pleaded any specific false claim or false statement.

Finally, the complaint fails on the materiality element. The FCA defines materiality as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "The

materiality standard is demanding." *Escobar*, 579 U.S. at 194. And it "cannot be found where noncompliance is minor or insubstantial." *Id.* What matters is "whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Id.* at 181.

With this in mind, the complaint cannot satisfy the materiality requirement. While the University disputes allegations of non-compliance, how the University labels debts that students owe, or which office serves as the point of contact for the account, would be a minor and insubstantial degree of noncompliance, if at all. The complaint contains one allegation that "[t]he government would not have continued to allow Title IV participation had it known the full scope of Defendants' noncompliance with both Subpart F and the collection practices that CFPB has already found unlawful." PageID.55. But this is merely a recitation of the element of materiality, which cannot support a claim under any pleading standard.

Ms. Yang cites a handful of cases for the proposition that debt other than student loans is dischargeable in bankruptcy and that withholding a student's transcript would violate an automatic bankruptcy stay. *See* PageID.54-55. It is worth noting that Ms. Yang had not filed for bankruptcy before filing this complaint. But ultimately, these are separate questions. To say that the Government would have ended the University's Title IV participation because the University mischaracterized debt as student loans, thereby discouraging students from filing for

bankruptcy, and would potentially violate bankruptcy stays in proceedings that had not yet been initiated is a bridge too far. It is simply too attenuated a connection to plead an FCA claim under the heightened pleading standard.

Any of the deficiencies discussed would warrant dismissal of Counts One and Two. Taken together, they render these claims wholly inadequate. The Court should dismiss Counts One and Two of the complaint.

**2. Count Four of the complaint fails to state a claim for conspiracy.**

In Count Four of the complaint, Ms. Yang alleges conspiracy under 31 U.S.C. § 3729(a)(1)(C). However, because the complaint fails to adequately plead an FCA violation, there can be no conspiracy to do the same. "[W]ithout an FCA violation, there is no injury and no viable conspiracy claim." *United States ex rel. Mich. v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 101639, *4 (6th Cir. Jan. 15, 2025) (citation omitted). But even if Ms. Yang could plausibly allege an FCA violation, the conspiracy count still fails.

The FCA imposes liability on any person who "conspires to commit a violation of" one or more of the other FCA subsections. 31 U.S.C. § 3729(a)(1)(C). Importantly, to satisfy the pleading standard, "it is not enough for relators to show there was an agreement that made it *likely* there would be a violation of the FCA; they must show an agreement was made *in order to* violate the FCA." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2017) (citing

*United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 17 (2d Cir. 2016)) (emphasis in original). Ms. Yang cannot meet this standard.

The complaint identifies the alleged conspirators: Defendants the University and Educational Computer Systems, Inc. ("ECSI"). It also gives a general description of what the alleged conspiracy was for: "UMich and ECSI conspired to defraud the United States by agreeing to present institutional accounts receivable to students as 'student loans' . . . with the knowledge and intent that such presentation would induce students to authorize the application of Title IV funds . . . ." PageID.58. This alone does not satisfy the pleading standard. The complaint does not say when or how this agreement was reached, or offer any specifics beyond a high level of generality. Instead, the complaint establishes a business relationship between the University and ECSI and leaves the Court to conclude that they improperly colluded to violate the FCA. "But a contractual relationship alone does not suggest collusion any more than it suggests a legitimate business relationship." *Angelo*, 106 F.4th at 453 (citing *Twombly*, 550 U.S. at 553-54).

Perhaps more consequential, though, is that the complaint fails to allege how any agreement was made *in order to* violate the FCA. The core theory in the complaint is that Defendants' FCA violations "chill the exercise of rights available to debtors under the Bankruptcy Code by mischaracterizing dischargeable institutional debt as nondischargeable, . . ." PageID.55. Even assuming that

Defendants did knowingly mischaracterize the debt and that doing so violated the FCA (two inferences that are inadequately pleaded and disputed), the complaint does not explain how the agreement was made in order to violate the FCA. The complaint seems to create an inference that any alleged conspiracy was directed at the students, and that any false claims to the Government were incidental to that scheme. The University, of course, denies any such conspiracy. The attenuated nature of the conspiracy, and the inferences that Ms. Yang leaves the Court to stack, cannot satisfy the heightened Rule 9(b) standard. The Court should dismiss Count Four of the complaint.

## III. CONCLUSION

The Court should dismiss the complaint. Ms. Yang is proceeding *pro se* and the United States has declined the intervene. This Court has held that it lacks jurisdiction in such instances. Should Ms. Yang find licensed counsel, or be allowed to proceed, the University is not a proper "person" for purposes of an FCA claim, and the Court should dismiss each count against the University. But should the Court find that the University is a "person" for these purposes, Ms. Yang has still failed to adequately plead several elements of each count, any of which is fatal to her claims.

Dated: October 26, 2026

Respectfully submitted,

*/s/ Lisa D. Starks*
Lisa D. Starks (P-78128)

**Barnes & Thornburg LLP**
171 Monroe Ave. NW, Ste. 1000
Grand Rapids, MI 49503
Phone: (260) 425-4627
Facsimile: (260) 424-8316
Lisa.Starks@btlaw.com

*/s/ Robert C. Folland*
Robert C. Folland (Ohio Bar No. 0065728)
**Barnes & Thornburg LLP**
41 S. High St., Ste. 3300
Columbus, OH 43215
Phone: (614) 628-0096
Facsimile: (614) 628-1433
Rob.Folland@btlaw.com
*Attorneys for Defendant The Regents of the University of Michigan*